United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN M LIBITZKY, et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>     Defendant. | Case No. 18-cv-00792-JD<br><br>**ORDER RE SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 43, 51 |

This is a case filed by Moses and Susan Libitzky, a married couple, for "refund and credit for income taxes paid for the tax year 2011" in the amount of $692,690. Dkt. No. 1 ¶¶ 1, 9. The United States agrees that the $692,690 was an overpayment, but it asserts that the Court lacks jurisdiction over this case and the credit or refund is statutorily barred because the Libitzkys failed to timely claim it.

The United States and the Libitzkys have filed cross-motions for summary judgment. Dkt. Nos. 43, 51. Both motions are denied, and the case will be set for trial.

## BACKGROUND

These are the key undisputed facts for purposes of these motions. Moses Libitzky is the owner of Libitzky Properties Companies and various subsidiaries. Dkt. No. 51-1 (Libitzky Decl.) ¶ 2. He and his wife, Susan, file their taxes jointly, and they have a "long time practice" of "overpay[ing] [their] income tax estimates each year" and "apply[ing] all overpayments as an advance payment to the subsequent year." *Id.* ¶ 4. Moses Libitzky explains that they do this "just so if any fluctuations occurred from gains or income, from investments or 'pass-through' entities, it would never create a shortfall or balance due." *Id.* From 2009 through 2018, the Libitzkys engaged Mark Albrecht as their tax accountant. *Id.* ¶ 3.

1	For the 2011 tax year, the Libitzkys filed a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, which was sent by certified mail to the Internal Revenue Service on April 17, 2012. Dkt. No. 52-6 at ECF pp. 2-4. The Form 4868 estimated a "total tax liability" of $1,495,332 for 2011; "[t]otal 2011 payments" of $1,185,332; and a "balance due" of $310,000. The Libitzkys sent a check for $310,000 with the Form. *Id*. As a result of this extension request, the Libitzkys' 2011 tax return was due by October 15, 2012.

Despite their alleged belief that the 2011 tax return was timely filed by this extended deadline, plaintiffs concede that they have no certified mail receipt or any other evidence to establish this happened. Nevertheless, the Libitzkys maintain that they believed their 2011 tax return had reported to the IRS an overpayment of $692,690, with a request that that amount be applied to their 2012 taxes. Dkt. No. 1 ¶ 9; Dkt. No. 51 at 5; Dkt. No. 51-1 ¶ 12.

On April 15, 2013, the Libitzkys filed a Form 4868 extension request for the 2012 tax year. Dkt. No. 52-6 at ECF pp. 5-6. This form estimated their "total tax liability for 2012" at $511,471 and reported "[t]otal 2012 payments" of $1,149,068, consequently showing a "balance due" of 0. *Id*.

The Libitzkys' 2012 tax return was also not filed by the deadline but the parties agree that the IRS has deemed the 2012 return filed as of February 6, 2015. Dkt. No. 43 at 5; Dkt. No. 51 at 5; Dkt. No. 53 at 2.[1] The return reported a total tax due of $506,820. Dkt. No. 52-3 at ECF p. 7 (line 61). For payments, the Libitzkys reported a total of $1,151,939 in payments, comprising $4,249 in "[f]ederal income tax withheld from Forms W-2 and 1099" (line 62) and $1,147,690 for "2012 estimated tax payments and amount applied from 2011 return" (line 63). Although not noted on the return, IRS documents show that the Libitzkys made estimated tax payments of $205,000 on June 18, 2012, and $250,000 on September 19, 2012. Dkt. No. 52-5 at ECF pp. 6-7. This means that for the $1,147,690 total "2012 estimated tax payments and amount applied from 2011 return," the 2012 estimated tax payments equaled $455,000, leaving $692,690 as the amount

---

[1] The United States stated once that the 2012 Form 1040 was not filed until July 13, 2015. Dkt. No. 43 at 2. It has not otherwise pressed that date and instead appears to agree with the Libitzkys that February 6, 2015, is the correct deemed-filed date for the 2012 return. Dkt. No. 43 at 5; Dkt. No. 53 at 2.

2

that must have been "applied from 2011 return." In any event, the bottom line for the 2012 return was that the Libitzkys had overpaid their taxes for that year by $645,119 (line 73), and once again they elected that entire amount as the amount to be "applied to your 2013 estimated tax" (line 75). Dkt. No. 52-3 at ECF p. 7.

The Libitzkys' 2013 tax return was filed in December 2014, and the amount of tax owed was $1,002,494. Dkt. No. 52-5 at ECF pp. 8-9; Dkt. No. 52-1 at ECF p. 3 (line 61). The return showed total payments of $1,124,833, which included $645,119 in "2013 estimated tax payments and amount applied from 2012 return." Dkt. No. 52-1 at ECF p. 3 (lines 63, 72). The return consequently showed $122,039 as the amount that was overpaid for the 2012 tax year, and it requested that that amount be applied to the Libitzkys' 2014 estimated tax. *Id.* (lines 73, 75).

On December 15, 2014, the IRS issued a notice informing the Libitzkys that they owed $577,924.18 for "[c]hanges to your 2013 Form 1040." Dkt. No. 1-1, Ex. A. Numerous communications between IRS personnel and Mark Albrecht followed, and revealed that the Libitzkys' 2011 tax return had simply never been filed. For reasons that are difficult to understand and as to which each side lays blame with the other, the Libitzkys' 2011 return was never properly (re-)filed during this time. Finally, on January 20, 2016, an IRS collection officer came in person to the Libitzky Properties office. Dkt. No. 51-1 ¶¶ 13, 19. She was provided with a signed copy of the Libitzkys' 2011 tax return, *id.* ¶ 19, and the Libitzkys' 2011 return was deemed filed on January 20, 2016. In it, the Libitzkys reported $805,766 in total tax (line 61), and $1,498,456 in total payments (line 72). The resulting overpayment was $692,690 (line 73), and the Libitzkys indicated that $692,690 was the amount they "want[ed] applied to your 2012 estimated tax" (line 75). Dkt. No. 50 at ECF pp. 36-37.

On April 20, 2016, the IRS issued a letter to the Libitzkys informing them that their claim for the $692,690 could not be allowed because "[y]ou filed your original tax return more than 3 years after the due date. Your tax return showed an overpayment; however, we can't allow your claim for credit or refund of this overpayment because you filed your return late." Dkt. No. 1-1, Ex. B. The letter continued, "We can only credit or refund an overpayment on a return you file

1    within 3 years from its due date.  We consider tax you withheld and estimated tax as paid on the
2    due date (i.e., April 15) for filing your tax return." *Id*.
3       By letter dated August 3, 2016, plaintiffs' counsel appealed the denial of the Libitzkys'
4    $692,690 claim for the 2011 tax year to the IRS.  Dkt. No. 1-1, Ex. C.  On November 29, 2017,
5    the IRS again determined that there was "no basis to allow any part of your claim" for the
6    $692,690.  Dkt. No. 1-1, Ex. D.  The letter advised plaintiffs that they could further pursue the
7    matter by filing suit with the district court within two years of the April 20, 2016 claim denial
8    letter.  *Id*.
9       On February 6, 2018, the Libitzkys filed the present suit.  Dkt. No. 1.  After unsuccessful
10   settlement efforts and a period of discovery, the present cross-motions for summary judgment
11   were filed.  Dkt. Nos. 43, 51.

**DISCUSSION**

**I.    SUMMARY JUDGMENT LEGAL STANDARDS**

Parties "may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court may dispose of less than the entire case and even just portions of a claim or defense.  *Smith v. Cal. Dep't of Highway Patrol*, 75 F. Supp. 3d 1173, 1179 (N.D. Cal. 2014).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it could affect the outcome of the suit under the governing law.  *Id.*

To determine whether a genuine dispute as to any material fact exists, the Court views the evidence in the light most favorable to the nonmoving party, and "all justifiable inferences are to be drawn" in that party's favor.  *Id.* at 255.  The moving party may initially establish the absence of a genuine issue of material fact by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  It is then the nonmoving party's burden to go beyond the pleadings and identify specific

4

facts that show a genuine issue for trial. *Id.* at 323-24. "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## II.   UNITED STATES' MOTION FOR SUMMARY JUDGMENT

### A.   Jurisdiction, Timeliness Under 26 U.S.C. § 6511(a), and Look-Back Period Under 26 U.S.C. § 6511(b)(2)(A)

The United States contends that the Court lacks jurisdiction because plaintiffs did not file a timely claim for refund or credit as required by statute. Dkt. No. 43 at 10-14. The argument is not successful.

As a sovereign, the United States is immune from suit, and can be sued only to the extent it has waived its sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Absent an explicit waiver of sovereign immunity, this Court has no jurisdiction over actions against the federal government. *Id.*

In 26 U.S.C. § 7422, Congress expressly waived sovereign immunity for civil refund actions subject to certain limitations. Specifically, Section 7422(a) provides that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

On the issue of when a claim for refund or credit must be filed with the Secretary, Congress specified in 26 U.S.C. § 6511(a) in relevant part that the refund or credit claim must be made "within 3 years from the time the return was filed, or 2 years from the time the tax was paid, whichever of such periods expires the later." As previously discussed, the Libitzkys' 2011 tax return was filed on January 20, 2016, and it contained a claim of a $692,690 credit towards their 2012 tax liability. Dkt. No. 50 at ECF pp. 36-37. As for the time the tax at issue was paid, by operation of statute, the Libitzkys' 2011 tax year payments are deemed to have been paid on April 17, 2012, the date 2011 tax returns were due,[2] notwithstanding the fact that the Libitzkys' 2011

---

[2] In 2012, April 15 fell on a Sunday. Monday, April 16, 2012, was the District of Columbia's Emancipation Day. Tax Day was consequently Tuesday, April 17, 2012.

5

return was not filed until January 2016. *See Baral v. United States*, 528 U.S. 431, 432-36 (2000) (citing 26 U.S.C. § 6513(b) and concluding that taxpayer's remittances for 1988 tax year were "paid" on April 15, 1989, despite taxpayer's 1988 return not being filed until June 1, 1993); 26 U.S.C. § 6513(b) ("Any amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return . . . for such taxable year (determined without regard to any extension of time for filing such return).").

It would appear then that the most straightforward path to finding the Section 6511(a) timely claim requirement satisfied, and jurisdiction present, would be to consider the Libitzkys' 2011 tax return to be their claim for credit. The claim would then have been filed "within 3 years from the time the return was filed," since the claim was filed as a part of the return itself. This would be consistent with the relevant regulations' directive that "[i]n general, in the case of an overpayment of income taxes, a claim for credit or refund of such overpayment shall be made on the appropriate income tax return." 26 C.F.R. § 301.6402-3(a)(1). And circuit law supports the view that a claim for credit included in a tax return is timely under Section 6511(a), even if the return itself is filed years after the deadline. *See Omohundro v. United States*, 300 F.3d 1065, 1069 (9th Cir. 2002) ("under I.R.C. § 6511(a), a taxpayer's claim for credit or a refund is timely if it is filed within three years from the date his income tax return is filed, regardless of when the return is filed.").

The story gets more complicated, however, because of the presence of Section 6511(b), "Limitation on allowance of credits and refunds." Under that section, even if the claim for refund or credit was filed within 3 years from the time the return was filed, "the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." 26 U.S.C. § 6511(b)(2)(A). This is referred to by the parties and in the case law as the "look-back period." *See*, *e.g.*, Dkt. No. 53 at 1; *Omohundro*, 300 F.3d at 1067 n.1. Here, if the relevant "claim" is to be the 2011 tax return, then that was filed on January 20, 2016, which means the look-back period under Section 6511(b) extends only as far back as July 20, 2012. Since the

Libitzkys' 2011 tax year payments are deemed to have been made on April 17, 2012, they would fall outside the look-back period by a little over three months and would not be recoverable.

For that reason, the Libitzkys argue that "[w]hether through the 2012 Form 4868, or through the 2012 Form 1040, or the combination thereof, or other documents and communications, [they] made a formal or informal claim (either of which is legally sufficient), timely." Dkt. No. 51 at 35.  Ordinarily the Court would have been inclined to find that what is recoverable is a merits inquiry, while the Section 6511(a) timely claim requirement is satisfied by the 2011 tax return at a minimum, thus establishing the Court's jurisdiction over this dispute.  The circuit has stated, however, that "§ 6511(b)(2)(A) is jurisdictional." *Zeier v. United States Internal Revenue Service*, 80 F.3d 1360, 1364 (9th Cir. 1996).  As another court has observed, this essentially collapses the jurisdictional and merits inquiries in cases like these.  *See Stevens v. United States*, No. 05-03967 SC, 2006 WL 1766794, at *3 n.3 (N.D. Cal. June 26, 2006) ("accepting that Section 6511(b)(2)(A) creates a jurisdictional bar to Plaintiff's case, Plaintiff may clear that bar with proof that the estate submitted an adequate informal claim, the same thing it will need to prevail on the merits.").

For the reasons below, the Court finds that there are questions of fact that will need to be resolved by a jury to determine if the Libitzkys made a timely and adequate informal claim such that their 2011 tax overpayment of $692,690 is recoverable under Section 6511(b)(2)(A).  Under the analysis laid out above, those questions also defeat the United States' request that the case be dismissed for lack of jurisdiction.[3]

**B.   The Informal Claim Doctrine and Whether the Libitzkys Filed an Adequate and Timely Informal Claim for § 6511(b)(2)(A) Purposes**

All parties agree that the Libitzkys' $692,690 tax overpayment at issue in this case was deemed paid as of April 17, 2012.  They also agree that the applicable look-back period was

---

[3] The Libitzkys have argued that the United States' "instant MSJ is not a proper proceeding in which [a jurisdictional] determination is appropriate." Dkt. No. 51 at 9-10.  There is nothing improper about questioning the Court's jurisdiction in a summary judgment motion; however, if the United States turns out to be right that the Court lacks jurisdiction, the appropriate result would be dismissal, not summary judgment in the United States' favor.

7

3.5 years in length. Consequently, to have been timely under Section 6511(b)(2)(A), the Libitzkys would have needed to file a claim for this overpayment by October 17, 2015. Of course, their 2011 tax return was not filed until January 20, 2016. The United States contends that this ends the inquiry but the Court finds that it is not as simple as that.

While the relevant regulations do say that a claim for credit of overpaid taxes should "in general" be made "on the appropriate income tax return," 26 C.F.R. § 301.6402-3, the United States Supreme Court and our circuit have long recognized what has come to be known as the "informal claim doctrine." In *United States v. Kales*, 314 U.S. 186 (1941), the Supreme Court stated, "[t]his Court, applying the statute and regulations, has often held that a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period. This is especially the case where such a claim has not misled the Commissioner and he has accepted and treated it as such." 314 U.S. at 194 (citations omitted). The Court noted that in applying those principles to the facts of that case, it was "necessary to read the letter of March 23, 1925, in the light of the peculiar circumstances then well known to the Commissioner and referred to in the letter." *Id*.

The Eighth Circuit Court of Appeals applied this doctrine in a case with facts very similar to this one. In *Kaffenberger v. United States*, 314 F.3d 944 (8th Cir. 2003), there was "no dispute that the Kaffenbergers overpaid their tax liability for the years involved. The dispute revolve[d] around whether they timely requested that the IRS give back the overpayment." 314 F.3d at 948. Noting the Supreme Court's holding in *Kales*, the *Kaffenberger* court held that "[t]he sufficiency of an informal claim depends on the individual facts of each case, with a view towards determining whether under those facts the Commissioner knew, or should have known, that a claim was being made." *Id*. at 955 (quotations omitted). "At a bare minimum, the Kaffenbergers' informal claim had to contain a written component within the statute of limitations, and must have been followed by a formal claim that remedied any defects in the informal claim." *Id*. The court held that for the Kaffenbergers' refund claim for the 1989 tax year, their Form 4686 Automatic

8

Extension Request for the 1990 tax year filed on April 15, 1991, which reflected "other payments and credits" of $26,700 for their 1990 tax return, "satisfie[d] the written component" for an informal claim. *Id*. There was "no dispute that the 1989 Form 1040, which was filed on July 29, 1994, and requested a refund of $38,309, and the 1989 Form 1040X, which was filed on September 26, 1995, and requested a refund of an additional $3,286, made formal claims for refund, albeit untimely ones. These forms satisfy the minimum requirements for an informal refund claim. Whether the remaining facts and circumstances satisfy the informal claim doctrine is highly fact intensive." *Id*. In *Kaffenberger*, a jury had determined that the Kaffenbergers had made a sufficient informal claim for refund within the statute of limitations. The court affirmed that determination, and concluded that the Kaffenbergers were "entitled to a refund of $26,700 from 1989." *Id*. at 956.

Our circuit has also recognized the informal claim doctrine and specifically cited *Kaffenberger* with approval. In *Commissioner of Internal Revenue v. Ewing*, 439 F.3d 1009 (9th Cir. 2006), which has been superseded by statute on other grounds, the circuit recognized that the informal claim doctrine "addresses whether an informal claim for a refund should stop the running of the statute of limitations for a refund claim," and quoted *Kaffenberger*'s statement that "the Supreme Court has endorsed informal claims filed within the statutory period that have technical deficiencies, as long as a valid refund claim is subsequently made after the period has run." 439 F.3d at 1015. And in *Palomares v. Commissioner of Internal Revenue*, 691 F. App'x 858 (9th Cir. 2017), an unpublished decision, the circuit noted that "[t]he informal claim doctrine permits a taxpayer to avoid the limitations of Section 6511(a) if the taxpayer filed a written refund request that was 'sufficient to apprise the Service that a refund is being claimed,' and 'specifies the tax and the year or years for which the refund is being sought sufficiently so that the Service can investigate the claim.'" 691 F. App'x at 858-59. The *Palomares* court again quoted *Kaffenberger*, this time for its statements that this is "a 'highly fact intensive' inquiry that lacks 'hard and fast rules,' and should focus on 'all the surrounding circumstances' and the 'claim as a whole.'" *Id*. at 859.

Here, it is unlikely that any claim other than the Libitzkys' 2011 tax return itself, which was filed on January 20, 2016, could have constituted the formal claim for credit for their $692,690 overpayment of 2011 taxes. But the Libitzkys have argued that either their 2012 Form 4868 or their 2012 Form 1040, both of which were filed before October 17, 2015, could have constituted informal claims which were timely filed. Under the case law discussed above, the Court finds that these could be sufficient informal claims, subject to further fact finding by a jury.[4] In the Court's view, the 2012 Form 1040 is an especially good candidate for a potential informal claim. It was written; filed on February 6, 2015, within the statute of limitations; and contained the Libitzkys' signatures and declarations under penalties of perjury that the information was correct. *See Kaffenberger*, 314 F.3d at 955. It reported a total payment of $1,147,690 for "2012 estimated tax payments and amount applied from 2011 return." Dkt. No. 52-3 at ECF p. 7. Other IRS documents show that the Libitzkys' 2012 estimated tax payments totaled $455,000, so simple math could have shown that the "amount applied from 2011 return" must have been $692,690. *See* Dkt. No. 52-5 at ECF pp. 6-7. And the 2012 return filed in February 2015 was followed by the 2011 return filed in January 2016, which more clearly and definitively showed how the $692,690 overpayment was generated, and expressly claimed that amount to be "applied to your 2012 estimated tax." Dkt. No. 50 at ECF p. 37.

The United States argues that the 2012 tax year forms cannot constitute sufficient informal claims because they "did not provide sufficient information for the IRS to determine the merits of [the Libitzkys'] claim for a credit/refund," and "[i]t was not until the 2011 return was filed that the IRS had a sufficient legal and factual basis to examine the merits of Plaintiffs' claim to apply a 2011 credit to their 2012 tax liability." Dkt. No. 53 at 5. This appears to misunderstand the informal claim doctrine. The written component within the statutory period need not contain all of the information necessary. *See Kaffenberger*, 314 F.3d at 955. In that case, at the time the Kaffenbergers filed their Form 4868 which was deemed to have been a sufficient informal claim, they "had not filed their 1989 Form 1040, so that the exact amount of the overpayment for 1989

---

[4] The Libitzkys have demanded a jury trial. Dkt. No. 1.

1    was unknown at that time." *Id*. at 956. So too here. Also, while it is true that an "overpayment

2    must appear before refund is authorized," *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932), it is also

3    true that "even 'an informal claim which fairly gives notice of a taxpayer's intention to press for a

4    refund of taxes is sufficient to satisfy the statutory requirement.'" *Sorenson v. Secretary of*

5    *Treasury of U.S.*, 752 F.2d 1433, 1439 (9th Cir. 1985).

6        The United States further argues that "without the 2011 Form 1040, no matter what

7    amounts were indicated on other submissions, the IRS could not begin to guess at the merits of,

8    the validity of, or the correctness of the purported overpayment for 2011." Dkt. No. 53 at 6. But

9    what the IRS could "begin to guess at" when it received the Libitzkys' 2012 tax return and Form

10   4868, in light of all the circumstances then known to the IRS, is precisely what the jury will need

11   to determine. *See Kales*, 314 U.S. at 194; *see also Kaffenberger*, 314 F.3d at 955 ("No hard and

12   fast rules can be applied because it is a combination of facts and circumstances which must

13   ultimately determine whether or not an informal claim constituting notice to the Commissioner has

14   been made. Necessarily each case must be decided on its own peculiar set of facts") (quotations

15   omitted).

16        The Court concludes that on this record, there are genuine disputes of material fact about

17   whether the Libitzkys' 2012 tax return or 2012 Form 4868 served as informal claims sufficient to

18   stop the running of the statute of limitations for their 2011 tax year overpayment under 26 U.S.C.

19   § 6511(b)(2)(A). The existence of these fact questions means that the Court cannot grant

20   summary judgment for the United States or for the Libitzkys, and the case will instead proceed to

21   a trial.

22   **III.  LIBITZKYS' MOTION FOR SUMMARY JUDGMENT**

23        As discussed, the Libitzkys' request for summary judgment in their favor also cannot be

24   granted. Dkt. No. 51. The record is too uncertain, and there is a fact-intensive inquiry that will

25   need to be undertaken by the jury as to the Libitzkys' assertion that they timely made an informal

26   claim.

27        The Libitzkys' arguments for estoppel against the government are denied. "The federal

28   government may not be estopped on the same terms as other litigants," and "[i]n addition to the

11

traditional requirements for estoppel, this Circuit requires a showing of affirmative misconduct going beyond mere negligence." *Rider v. U.S. Postal Service*, 862 F.2d 239, 240 (9th Cir. 1988) (quotations omitted). That standard is not met here, where "[t]here is no pervasive pattern of false promises." *Lavin v. Marsh*, 644 F.2d 1378, 1383 (9th Cir. 1981). Even when viewed in the light most favorable to the Libitzkys, the evidence here is akin to the facts deemed insufficient in *Lavin*. There is no suggestion that any IRS agents "deliberately and knowingly lied" about the Libitzkys' tax situation or how they could remedy it; there is "no suggestion that the regulations were unpublished or unavailable to" the Libitzkys; or that the Libitzkys, sophisticated and well-resourced businesspeople with an in-house accountant, "could not read them and recognize" their own tax issues and how to fix them. *Id*. at 1382. "Persons dealing with the government are charged with knowing government statutes and regulations, and they assume the risk that government agents may exceed their authority and provide misinformation." *Id*. at 1383.

## CONCLUSION

The cross-motions for summary judgment are denied. Dkt. Nos. 43, 51. The case will be re-opened, and a status conference will be held on November 18, 2021, at 10:00 a.m. The parties should be prepared to set dates for a pretrial conference and trial.

**IT IS SO ORDERED.**

Dated: August 6, 2021

JAMES DONATO
United States District Judge