UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOSES S. LIBITZKY and SUSAN M. LIBITZKY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 18-cv-00792-JD<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Married taxpayers Moses and Susan Libitzky filed this action against the United States for a "refund and credit for income taxes paid for the tax year 2011," in the amount of $692,690. Dkt. No. 1 ¶¶ 1, 9; Dkt. No. 76 ¶ 1. The cross-motions for summary judgment were denied, Dkt. No. 57, and the case was tried by the Court pursuant to the parties' stipulation to a non-jury trial under Federal Rule of Civil Procedure 39(a)(1). Dkt. No. 72.

Over the course of the two-day bench trial, counsel for both sides examined witnesses, moved documents into evidence, and read deposition transcripts into the record. Dkt. Nos. 91, 92. After the close of evidence, the parties filed proposed findings of fact and conclusions of law, and the Court heard closing arguments. Dkt. Nos. 101, 102, 103.

The Court makes the ensuing findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1). In light of the evidence admitted at trial, the Court's observation of the demeanor, credibility, and candor of the witnesses, and the arguments of the parties at trial and in post-trial filings, the Court finds that the Libitzkys did not make an adequate and timely

refund or credit claim for their $692,690 payment for the 2011 tax year, and the case must be dismissed for lack of jurisdiction under 26 U.S.C. § 6511(b)(2)(A).

**BACKGROUND**

The parties and the Court are deeply familiar with the facts and history of this case. The Libitzkys had a number of issues with their federal income taxes for the 2011, 2012, and 2013 tax years. The 2011 tax year is the one at issue in this case. As the Court noted in the summary judgment order, Dkt. No. 57, many of the key facts here are not disputed. The parties agree that: (1) the Libitzkys overpaid their taxes for the 2011 tax year by $692,690; (2) the Libitzkys' 2011 tax year payments are legally deemed to have been made on April 17, 2012; and (3) the Libitzkys' 2011 tax return was not deemed filed with the Internal Revenue Service (IRS) until January 20, 2016. The parties also agree that the Libitzkys' late-filed 2011 tax return was their formal claim for a credit for the $692,690 overpayment. *See also* 26 C.F.R. § 301.6402-3(a)(1) (claim for credit or refund for overpaid income taxes should "[i]n general" be made "on the appropriate income tax return").

For the reasons the Court detailed in the summary judgment order, Dkt. No. 57, if the Libitzkys made a valid informal claim for refund or credit by October 17, 2015, they may recover the $692,690. If they did not, the overpayment is not recoverable, and the Court lacks jurisdiction over their claim. This is because under 26 U.S.C. § 7422, the United States has waived its sovereign immunity for civil refund actions where a claim for refund or credit has been "duly filed with the Secretary" of Treasury according to the relevant laws and regulations. Under 26 U.S.C. § 6511(a), refund or credit claims must be made "within 3 years from the time the return was filed, or 2 years from the time the tax was paid," whichever is later. In any event, under 26 U.S.C. § 6511(b)(2)(A), "the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." The parties agree that this "look-back period" here was 3.5 years in length, so to have been timely under § 6511(b)(2)(A), the Libitzkys needed to file a claim for the $692,690 overpayment by October 17, 2015, which is 3.5 years from April 17, 2012, the date the 2011 payments are deemed to have been made. Our circuit has held that

"§ 6511(b)(2)(A) is jurisdictional." *Zeier v. United States Internal Revenue Service*, 80 F.3d 1360, 1364 (9th Cir. 1996).

The agreements on the facts effectively narrowed the bench trial to this question: did the Libitzkys make an informal claim to the IRS by October 17, 2015, asking for a credit or refund for the $692,690 they overpaid for the 2011 tax year?[1] They did not, for the reasons stated in the ensuing findings and conclusions.

**FINDINGS OF FACT**

1. Moses and Susan Libitzky are married taxpayers who, for all relevant years, filed their federal income tax returns jointly. Dkt. No. 76 (Joint Statement of Stipulated Facts, or JSF) ¶ 1; Dkt. Nos. 98 & 99 (Trial Tr.) at 15:9-11.

2. Moses Libitzky owns and operates the Libitzky Properties Companies, a small business engaged in real estate investment and management, with offices in Emeryville, California. JSF ¶ 2; Trial Tr. at 12:2-9. Susan Libitzky does not have any involvement in the business of Libitzky Properties, or play any role in the preparation of the Libitzkys' personal income tax returns. Trial Tr. at 11:22-25, 14:10-12; JSF ¶ 27.[2]

3. The Libitzkys had a historical practice of overpaying their taxes, and electing to apply any overpayment credit for a given tax year to their tax liability for the following year. Trial Tr. at 25:14-19.

4. From 2009 to 2018, Mark Albrecht worked in-house for Libitzky Properties as a tax accountant responsible for preparing and filing tax returns, among other duties. JSF ¶ 3; Trial Tr. at 70:17-21, 114:6-8. Albrecht worked in close physical proximity to Libitzky in the Emeryville office, and the two men had frequent interactions throughout the day on accounting and tax matters. Trial Tr. at 13:18-14:2. In addition to handling Libitzky Properties' business tax

---

[1] The government made a rather cursory stab at suggesting that an informal claim needed to have been made by April 17, 2014, two years after the payments, but the Court rejected that theory in the summary judgment order, *see* Dkt. No. 57 at 5-6, and nothing new warrants a reconsideration.

[2] For this and other personal medical reasons, Susan Libitzky was not present at the bench trial. Trial Tr. at 11:16-21. Unless otherwise noted, all subsequent references to "Libitzky" in this order are to Moses Libitzky, who was present and provided testimony at trial.

1  returns, Albrecht prepared and handled the Libitzkys' personal federal and state income tax
2  returns. JSF ¶ 3; Trial Tr. at 14:3-9. To be clear, only the Libitzkys' personal federal income tax
3  returns are at issue in this case.

4      5.    Libitzky knew that Albrecht had substance abuse issues, namely with alcohol,
5  which sometimes caused him to miss work. Trial Tr. at 113:14-114:5. Libitzky became aware
6  that Albrecht had lost his certified public accountant license. Trial Exh. 247; Trial Tr. at 72:12-22.
7  Libitzky Properties terminated its engagement of Albrecht in December 2018, in part because of
8  Albrecht's "issues at home" and his "drinking issue." Trial Tr. at 13:11-13, 114:6-8, 115:4-7.

9      6.    For the 2011 tax year, the Libitzkys had a number of credits posted to their federal
10 income tax account: on April 15, 2011, a credit for $455,332 was posted as a credit from the
11 previous year; on June 17, 2011, the Libitzkys made estimated tax payments of $350,434 and
12 $99,566; and on September 16, 2011, they made another estimated tax payment of $280,000.
13 Trial Tr. at 274:19-275:3; Trial Exh. 212. These credits totaled $1,185,332.

14     7.    In April 2012, the Libitzkys timely filed a Form 4868, Application for Automatic
15 Extension of Time to File U.S. Individual Income Tax Return, for the 2011 tax year, seeking an
16 extension of time to file their return through October 15, 2012. JSF ¶ 6. With the extension
17 request, the Libitzkys made an additional $310,000 payment towards their 2011 taxes, bringing
18 their 2011 total credits to $1,495,332. Trial Tr. at 274:19-275:3; Trial Exh. 212.

19     8.    The Libitzkys believed that their 2011 federal income tax return was timely filed
20 before the October 15, 2012 deadline, but they have no proof of this; the return was not mailed by
21 certified or registered mail. JSF ¶ 10. The IRS has no record of receiving a timely 2011 return.
22 Trial Tr. 177:10-13. It is likely that Albrecht did not mail it. The Libitzkys did not know there
23 was reason for concern.

24     9.    For the 2012 tax year, the Libitzkys made an estimated tax payment of $205,000 on
25 June 18, 2012, and an estimated tax payment of $250,000 on September 19, 2012. Trial Exh. 202
26 at 2; JSF ¶¶ 8, 9. These estimated tax payments total $455,000.

27     10.    On April 15, 2013, the Libitzkys timely filed a Form 4868 extension request for
28 their 2012 income tax return, requesting that the due date be extended to October 15, 2013. JSF

¶ 11.  The Form 4868 listed an "[e]stimate of total tax liability for 2012" of $511,471, and "[t]otal 2012 payments" of $1,149,068.  Trial Exh. 106.  The difference between the "total 2012 payments" number they gave on the Form 4868, and the amount of estimated tax payments they made for the 2012 tax year, is $694,068.

11. Shannon Krueger testified at trial as the government's person most knowledgeable about IRS practices for extension applications.  Trial Tr. at 125:7-24.  She testified that an extension request such as plaintiffs' 2012 Form 4868 would have been received in the mailroom, which "would first determine if the Form 4868 had been timely filed."  *Id*. at 139:15-140:2.  If the form was timely filed, as plaintiffs' 2012 form was, then the Form 4868 would be "sent to an area where a 13-digit document locater number would be stamped."  *Id*. at 140:3-11.  From there, the form would be sent to the "integrated submission and remittance processing area," where data transcribers would take data from the taxpayers' form and input it into the IRS' computer system.  *Id*. at 140:12-17.  The IRS data transcribers "don't look at the numbers on the front of the form," and they do not input the amount of tax liability or the amount of payments.  *Id*. at 141:11-18.  They look only at "the receipt date, the form, making sure that the social security number is correct, and the first four letters of the taxpayer's name is correct, and then an automatic extension is granted" as a matter of course.  *Id*. at 141:22-142:1, 143:18-24.

12. The delinquency of the Libitzkys' 2011 tax return was eventually noted, and the IRS sent the Libitzkys four separate notices in April and June of 2013, telling them that their 2011 tax return had not been filed.  Moses and Susan Libitzky were each sent a "CP59" notice in April 2013, which stated that they had not filed a 2011 tax return and that they "risk[ed] losing [their] refund" if they didn't file the return.  Trial Exh. 228; Trial Tr. at 181:1-183:20.  In June 2013, Moses and Susan Libitzky were each mailed a follow-up "CP518" letter, in which the IRS informed them that "we still haven't received your" return and "you must file" the return; the letter again expressly advised the Libitzkys, "You risk losing any available deductions, credits or refund if you don't file your return."  Trial Exh. 229; Trial Tr. at 187:15-190:21.  Moses Libitzky recalled "receiv[ing] the notice from the IRS in . . . March or April [of 2013] saying that they hadn't received" the Libitzkys' 2011 return.  Trial Tr. at 82:25-83:10.  Libitzky testified that he did not

5

receive the June 2013 notice, *see id*. at 83:6-10, but the Court finds, based on the totality of the witness testimony and documentary evidence at trial, that the IRS records and the testimony of IRS witness James Linstead established that the CP518 letters were mailed to the Libitzkys in June 2013. In any event, a copy of the Libitzkys' 2011 tax return was not submitted to the IRS during this time.

13. As demonstrated, October 15, 2013, was the extended due date for the Libitzkys' 2012 income tax return per the Form 4868, but the 2012 return was not filed by the due date. JSF ¶¶ 11, 13; Trial Tr. at 193:12-16.

14. The following year, the Libitzkys' 2013 return was timely filed by the extended due date of October 15, 2014. JSF ¶¶ 14, 16.

15. In December 2014, the IRS mailed to the Libitzkys a "CP23" discrepancy notice for the 2013 tax year. Trial Exh. 218. The notice advised the Libitzkys that they owed $1,002,494 in taxes for 2013, had paid only $479,714, and so with penalties and interest, owed an additional $577,924.18, with payment due by December 30, 2014. *Id*. Libitzky specifically recalled receiving this notice. Trial Tr. at 25:21-26:8. Libitzky's personal practice was to open and read all mail addressed to the Libitzkys from the IRS, and then to route the correspondence to Albrecht. *Id*. at 78:25-79:25. That is what happened with the December 2014 notice, and Libitzky believed that Albrecht would be handling the matter. *Id*. at 27:11-20.

16. On February 2, 2015, Albrecht sent a letter to the IRS. Trial Exh. 104. The subject line included the Libitzkys' names and Moses Libitzky's social security number, and referenced "Notice: CP23," "Tax Year: 2013," and "Tax Form: 1040." *Id*. The letter is an important item of evidence, and states:

> Dear Sir or Madam:
>
> This letter is being written in response to a notice recently received concerning the married taxpayers, Moses and Susan Libitzky. The notice concerns their 2013 U.S. Individual Income Tax Return (Form 1040) which I am the preparer of. For reference, a photocopy of the notice received is attached to this letter.
>
> The amount of tax reported in the attached notice is correct. The notice does not recognize the $645,119 of overpaid 2012 income taxes that were applied to 2013. Attached are photocopies of pages one and two of Moses

6

> and Susan Libitzky' [*sic*] 2012 and 2013 U.S. Individual Income Tax Returns. Please employ the attached photocopies of the 2012 and 2013 Form 1040s to adjust the taxpayers' records.
>
> Should there be any questions, or a need for additional information, please feel free to call.
>
> Respectfully,
>
> Mark Albrecht, CPA

*Id*. Attached to the letter were: (1) an unsigned copy of the Libitzkys' 2013 return; (2) a signed copy of the Libitzkys' 2012 return; and (3) the CP23 notice the Libitzkys had received in December 2014 for the 2013 tax year, saying that they owed an additional $577,924.18. *Id*.

17. On February 5, 2015 (a day before the IRS received the February 2 letter, *see* Trial Exh. 104), Albrecht called the IRS. The IRS records note that Albrecht "called about 2013 bc the refund from previous return was to be applied to this balance. Credits sitting on 2011 and 2012 but no returns have been filed. Advised designee to call back with a 2848 or the taxpayer so we can discuss the issue." Trial Exh. 128 at 2. IRS witness Linstead stated that this record shows that Albrecht was advised "to call with a valid power of attorney or with the taxpayer so they can discuss the issue." Trial Tr. at 201:24-25. Linstead said that the note, "credits sitting on 2011 and 2012 but no returns have been filed," simply meant that "there's a credit balance on those tax years but no returns have been filed." *Id*. at 203:6-7. The records do not suggest that any determination was made that there was an overpayment credit, because an "overpayment can't be determined until the return is filed." *Id*. at 203:19-22. There is nothing in the IRS entry for this phone call "that would indicate Mr. Albrecht mentioned 2011" at all on this call. *Id*. at 209:7-8.

18. On February 6, 2015, after the IRS received Albrecht's February 2 letter, it processed the signed copy of the Libitzkys' 2012 tax return that was attached to the letter, and deemed the 2012 return filed as of February 6, 2015. JSF ¶ 13. Line 63 of the 2012 return called for "2012 estimated tax payments and amount applied from 2011 return," and the Libitzkys responded with the amount of "$1,147,690." Trial Exh. 206 at 2. The $1,147,690 amount is given as a single figure, and witness Linstead testified that it is not possible to tell, "from the return itself," "what portion of that $1.147 million figure is a carryover from 2011." Trial Tr. at 195:22-

7

25. Linstead testified that the IRS "would have no way of telling" what amount the Libitzkys were seeking to claim as a 2011 carryover credit from just looking at the 2012 return. *Id*. at 196:9-12.

19. IRS customer service representative William Reiher was tasked with drafting a custom response to Albrecht's February 2, 2015 letter. Trial Tr. at 224:19-225:8, 287:7-11, 289:18-22. The matter was assigned to Reiher on March 12, 2015, and he "worked the file" that day, issuing what is known as an "86C" letter. *Id*. at 289:18-290:5; *see* Trial Exh. 128 at 5. The letter advised the Libitzkys that the IRS was "responding to an inquiry of Feb. 02, 2015, on your behalf from Mark Albrecht, CPA," but the IRS had "no record that you authorized him to act for you," so the Libitzkys were requested to complete "Form 2848, Power of Attorney and Declaration of Representative" if they wished to authorize Albrecht to represent them going forward. Trial Exh. 126. The letter also stated:

> Mr. Albrecht's letter states that there should have been a credit elect to apply your overpayment of taxes for the 2012 tax period, in the amount of $645,119.00 to your 2013 tax obligation. He also included a copy of your 2012 tax return. Prior to this correspondence, we have no record of having received this 2012 return.
>
> We're sending your claim, Form 1040, to the Austin, Texas Customer Service Center to process. That office will contact you within 30 days.
>
> Additionally, a comparison of your estimated tax payments to the figure entered on line 63 of your 2012 return indicates that you may have also expected a credit elect to be applied from 2011 to 2012. On March 7, 2013, we sent you a Notice of Return Delinquency which explained that we had not received your 2011 tax return. To date, we have still not received your 2011 tax return.
>
> If you need forms, schedules, or publications, you can obtain them by visiting the IRS website at www.irs.gov or by calling toll-free at 800-TAX-FORM (800-829-3676).
>
> If you have questions, call us at 800-829-8374.
>
> If you prefer, you can write to us at the address at the top of the first page of this letter.

*Id*.

20. As discussed, line 63 of the Libitzkys' 2012 return had noted $1,147,690 as "2012 estimated tax payments and amount applied from 2011 return," and Reiher testified that he "may

8

well have" attempted to "confirm what portion of that $1,147,690 might have emanated from a 2011 carry forward." Trial Tr. at 293:15-23. In response to a question about whether, in his "working of a file such as this," he "could have identified that some portion of this was, in fact, an amount applied from a 2011 return," Reiher said, "yes, I would have been able to determine that." *Id*. at 295:3-8.

21. On July 7, 2015, Albrecht called the IRS again. The IRS call record states in relevant part: "POA incall (Mark Albrecht). POA faxed acceptable 2848 for primary 1040/2010-2015. . . . Informed POA of 30201112 TDI. 30201112 would have carried forward credit that would eliminate the balances on account." Trial Exh. 128 at 2. Linstead testified that this record indicates that the IRS was able to discuss the Libitzkys' tax matter with Albrecht because a Power of Attorney form had been faxed. Trial Tr. 232:8-14. The record also shows that Albrecht was informed of "30201112 TDI," which means that he was told that there was a tax delinquency investigation (because no return had been filed) for the Libitzkys' Form 1040 for the 2011 tax year. *Id*. at 232:16-233:2. The note that the 2011 return "would have carried forward credit that would eliminate the balances on the account" is a statement "that would have [had] to come from Mr. Albrecht," and not from the IRS contact service representative. *Id*. at 234:6-16.

22. On August 31, 2015, the IRS issued a "CP90" notice to the Libitzkys stating an "intent to seize your assets" for the "amount due immediately: $616,497.21." Trial Exh. 219. The notice further stated, "[s]end us the amount due of $616,497.21, or we may seize (levy) your property on or after September 30, 2015." *Id*.

23. On September 16, 2015, Albrecht again called the IRS. The IRS call notes state: "Mark Albrecht called ACS. . . . Taxpayer will file 2011 by 09/23/2015. Refund return will full pay the balance due." Trial Exh. 128 at 1. The notes also state: "reviewed 2012 RTN, TP filed Schedule A but not showing on TRDBV. Told POA to resend Schedule A with letter. Gave CSC ADR. POA states carry overs on 2011/12 will FP 2013." *Id*. IRS representative Lisa Kaslouski, who handled this call and made the notes, testified that the last sentence indicates that the "power of attorney states carry overs on 2011 and 2012 would full pay 2013." Trial Tr. at 300:10-13. She

9

testified, "I wrote down that he said it, but, in general, I would have also written down the amounts that is showing if I understood I was agreeing with him." *Id*. at 301:8-11.

24. Libitzky recalled being informed in September 2015 that the 2011 return still had not been processed, and that the IRS was requesting a copy of the 2011 return. Trial Tr. at 54:6-16. He again did not take the necessary steps to ensure that a copy of the return was provided to the IRS.

25. On December 26, 2015, the Libitzkys' case was assigned to IRS revenue agent Monica McKenna for collections. Trial Tr. at 272:23-273:2. The assignment to McKenna was for "two balance dues, one for 2012, one for 2013," and "a delinquent return for 2011 for Form 1040's." *Id*. at 273:6-9. McKenna wrote up a history of the account when she got the assignment, and her report noted that there was a delinquent return for 2011, and also that the account "has credits of $1,495,332." *Id*. at 273:9-274:5; Trial Exh. 127 at 2. McKenna made a plan of action to make a field call on January 20, 2016, to secure full payment and the delinquent return. Trial Exh. 127 at 2.

26. McKenna acted on her plan, and visited the Libitzky Properties office in Emeryville on January 20, 2016. Trial Exh. 127 at 3; Trial Tr. at 275:16-23. Libitzky recalled this visit, and stated that McKenna met with him and Albrecht. Trial Tr. at 56:6-19. McKenna asked for a copy of the 2011 return with original signatures by Moses and Susan Libitzky. *Id*. at 64:1-12. Moses Libitzky went home to get Susan Libitzky's signature, and brought the signed return back to the office. *Id*. at 64:13-14. The signed copy of the 2011 return was faxed to McKenna as she had requested, *id*. at 64:15, and the 2011 return was finally deemed filed as of January 20, 2016. JSF ¶ 10; Trial Exh. 116.

27. On April 1, 2016, McKenna received the Libitzkys' Schedule A for the 2012 tax year by fax from Albrecht. Trial Exh. 127 at 13; Trial Tr. at 278:17-24. On that basis, McKenna "requested the tax to be adjusted based on the Schedule A," and noted that it "needs to be abated in the amount of $420,533.49." Trial Tr. at 279:1-3. The Libitzkys' taxes for the 2012 tax year were abated by that amount, and the interest ($33,545.62), late-filing penalty ($105,323.96) and failure to pay tax penalty ($6,422.08) were abated as well. *Id*. at 280:17-21. For the 2013 tax year

10

1  also, the late payment penalty ($23,525.10) and failure to pay tax penalty ($20,911.20) were

2  abated. *Id*. at 281:2-7.  There were no penalties assessed for the 2011 tax year because there was

3  no balance due. *Id*. at 281:9-14.  Instead, the parties disputed whether the Libitzkys could claim

4  an overpayment credit of $692,690 for the 2011 tax year to be applied to the 2012 tax year, and

5  that dispute grew into this case.

## CONCLUSIONS OF LAW

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  The burden of establishing that a case is within the Court's limited jurisdiction "rests upon the party asserting jurisdiction." *Id*.  In this case, the Libitzkys have the burden of establishing that they made a timely informal claim.

What has come to be known as the "informal claim doctrine" originated with the Supreme Court's decision in *United States v. Kales*, 314 U.S. 186 (1941).  As the Supreme Court stated, "[t]his Court, applying the statute and regulations, has often held that a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period.  This is especially the case where such a claim has not misled the Commissioner and he has accepted and treated it as such." *Kales*, 314 U.S. at 194 (internal citations omitted).  As the Court stated in the summary judgment order, whether an adequate informal claim has been made is a "highly fact intensive inquiry that lacks hard and fast rules, and should focus on all the surrounding circumstances and the claim as a whole." Dkt. No. 57 at 9 (cleaned up).

The protest letter found to be an adequate informal claim in *Kales* is instructive.  The taxpayer had sold some stock in 1919, relying on the IRS Commissioner's advance ruling that the value of that stock was $9,489 per share in 1913, when she had acquired it.  She reported her profit from the sale in her income tax return for the 1919 tax year, and paid the taxes owed.  When the Commissioner, in 1925, made a jeopardy deficiency assessment against the taxpayer on the

11

1   ground that she had overstated the 1913 value of the stock in her 1919 tax return, the taxpayer paid
2   the additional assessment and also "lodged with the collector and the Commissioner a written
3   protest." *Kales*, 314 U.S. at 190.

4         The protest letter "advised the collector, the Commissioner and the Government, that while
5   it was respondent's position that the deficiency assessment was illegal and void," if the earlier
6   assessment of the value of her stock were to be "vacated, set aside, reopened or reversed, then
7   respondent would insist that the valuation fixed by the Commissioner in 1919 was less than the
8   fair market value as of March 1, 1913, that the 1919 tax which she had paid in 1920 was
9   correspondingly excessive and that she should recover the tax to the extent of such excess when
10  the fair value had been determined." *Id*. at 191. She added that "'if for any reason a revaluation
11  shall be had,' she 'will insist' that the stock was greatly undervalued by the Department and 'will
12  claim the right to a refund' of the excess tax collected." *Id*. The taxpayer later filed a formal
13  claim for refund in 1928, claiming that the 1913 value of her stock was in fact $10,000 per share
14  and so she should have been taxed on a lower profits figure. *Id*. at 191.

15        The Supreme Court held that the 1928 claim for a refund was not barred by the statute of
16  limitations because the taxpayer had made a timely informal claim through her protest letter in
17  1925. The Court held that "[w]hen respondent filed her letter[,] the time within which a claim for
18  refund could be filed was about to expire, and the occurrence of the contingencies on which a
19  recovery could be had by respondent remained uncertain. But the Commissioner could have been
20  left in no doubt that she was setting forth her right to a refund in the event of a departmental
21  revision of its 1919 valuation of her stock. Her letter was present notice that if the department
22  insisted upon changing its original decision as to the 1913 value, she asserted that the stock had
23  been undervalued and in consequence of the undervaluation she had a right to a refund." *Id*. at
24  195.

25        The question here is whether the Libitzkys submitted to the IRS something akin to the
26  protest letter in *Kales*, which "could have . . . left [the IRS] in no doubt" that the Libitzkys were
27  "setting forth [their] right" to a credit for the $692,690 they overpaid for the 2011 tax year. *See*
28

*Kales*, 314 U.S. at 195. The evidence at trial demonstrated that they did not do so, and plaintiffs' suggestions to the contrary are misdirected.

Plaintiffs rely primarily on the February 2, 2015 letter from Albrecht to the IRS as the document closest to the protest letter in *Kales*. The problem for plaintiffs is that the letter made no mention whatsoever of the 2011 tax year, not in the subject line, in the body of the letter, or anywhere else. The letter focused almost entirely on the 2013 CP23 notice. It mentioned the 2012 tax year, but not 2011. The letter attached an unsigned copy of the Libitzkys' 2013 tax return and a signed copy of the Libitzkys' 2012 tax return, thereby curing the deficiency of the 2012 tax return. But it did not attach a copy of the 2011 return, signed or unsigned, despite the fact that by this time, the Libitzkys had been mailed multiple notices of its delinquency, at least one of which Libitzky specifically recalled receiving in April 2013. Trial Tr. at 83:1-7.

That was the Libitzkys' best shot at demonstrating informal notice, and it does not carry the day for them. The 2012 tax return that was attached to Albrecht's February 2, 2015 letter is also insufficient as an informal claim for the 2011 credit. Line 63 of the 2012 return gave a single figure, "$1,147,690," as the "2012 estimated tax payments and amount applied from 2011 return." Trial Exh. 206 at 2. Without any further breakdown, this total figure did not "fairly advis[e]" the IRS that the Libitzkys were claiming $692,690 as the amount to be applied from the 2011 tax year. *Kales*, 314 U.S. at 194. Nor did this lump-sum figure in the 2012 tax return "focus" the IRS' "attention . . . on the merits of" any claim for a 2011 credit. *Angelus Milling Co. v. Commissioner of Internal Revenue*, 325 U.S. 293, 299 (1945). Indeed, the merits of such a claim would have been impossible for the IRS to determine at this stage because, despite the IRS' multiple notices and entreaties that the Libitzkys "must file" their 2011 return in order not to "risk losing any available . . . credits," Trial Exhs. 228, 229, the Libitzkys had not sent in their 2011 return.

The same goes for the Form 4868 for 2012 filed on April 15, 2013. Plaintiffs suggest that the "[t]otal payments made in 2012" on line 5 of this form "constructively announced their intention to claim $1,149,068 in payments or credits." Dkt. No. 101 ¶ 46. But this lump-sum figure for 2012 could not have alerted the IRS of a claimed 2011 carryover credit for $692,690, for the same reasons discussed for the similar figure on line 63 of the 2012 tax return. In addition, the

13

1   IRS gave clear and persuasive testimony that Form 4868 extension requests are processed as a

2   matter of course, without any substantive scrutiny which might have enabled the IRS to recognize

3   that the form contained an informal claim. *See* Findings of Fact ¶ 11, *supra*.

4       In the absence of proof of an informal notice, the Libitzkys' fallback position is that "[t]he

5   testimony of Mr. Libitzky, together with the other records before this Court as evidence, including

6   the account transcript, and the 2011 and 2012 tax returns, confirm $692,690 of the payments

7   claimed on the Form 4868 was from the overpayment credit carryover from 2011 they knew they

8   had." Dkt. No. 101 ¶ 46. That is much too indirect to be useful in pinning a refund on the IRS. It

9   is "not enough that somewhere under the Commissioner's roof is the information which might

10  enable him to pass on a claim for refund." *Angelus Milling*, 325 U.S. at 299.

11      Plaintiffs also make a rather puzzling reference to the 86C letter created by IRS agent

12  William Reiher as ostensible evidence of an informal claim. They say that Reiher's 86C letter --

13  together with either or both Albrecht's July 7, 2015 and September 16, 2015 calls, as documented

14  in the IRS' records -- is sufficient to constitute an informal claim. Dkt. No. 101 ¶ 42. This is an

15  untenable proposition. A letter written by Reiher is not a claim made by plaintiffs, and to the

16  extent the Libitzkys are claiming that Reiher's writing confirmed a claim that they had made

17  orally, plaintiffs themselves acknowledge that "[c]ourts have generally held there must be at least

18  some written element to constitute a valid informal claim." Dkt. No. 101 ¶ 36; *see also*

19  *Kaffenberger v. United States*, 314 F.3d 944, 955 (8th Cir. 2003). Oral statements made during

20  telephone calls, at least in the circumstances presented here, are too tenuous and unreliable to form

21  the basis of an informal claim. This is amply demonstrated by Albrecht's statement to Kaslouski

22  that the "taxpayer will file [the] 2011 [return] by 09/23/2015," which did not come to pass. Trial

23  Exh. 128 at 1.

24      Reiher was asked whether, in working a file like this one, he "could have identified that

25  some portion of [the $1,147,690 noted in line 63 of the Libitzkys' 2012 return] was, in fact, an

26  amount applied from a 2011 return," and he responded, "yes, I would have been able to determine

27  that." Trial Tr. at 295:3-8. This abstract possibility is no lifeline for the Libitzkys because there

28  was no evidence that Reiher undertook that determination; there were no proposed figures that he

14

1  put together for what might be the Libitzkys' 2011 carryover credit. There was no evidence that
2  anyone at the IRS ever put together that proposed number prior to the Libitzkys providing their
3  2011 return to Agent McKenna in January 2016. To the extent the Libitzkys seek to rely on
4  Reiher's statement suggesting that he "would" have been able to piece this together, the Supreme
5  Court's holding in *Angelus Milling*, 325 U.S. 293, underscores what is still missing for a finding
6  of an informal claim:

> Since . . . the tight net which the Treasury Regulations fashion is for the protection of the revenue, courts should not unduly help disobedient refund claimants to slip through it. The showing should be unmistakable that the Commissioner has in fact been fit to dispense with his formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute. The evidence should be clear that the Commissioner understood the specific claim that was made even though there was a departure from form in its submission.

13  *Angelus Milling*, 325 U.S. at 297-98. Here, there was no showing whatsoever that the IRS
14  "dispensed with the formal requirements of a claim by investigating its merits," *id*. at 296, and the
15  Libitzkys also failed to put forward evidence that they made any submissions that focused the
16  IRS' attention on the merits of any claimed 2011 carryover credit.

17  The Court discussed *Kaffenberger* at some length in the summary judgment order, *see*,
18  *e.g.*, Dkt. No. 57 at 8-9, and the case does not cut in favor of the Libitzkys. The United States
19  offered at trial the Form 4868 that was in effect during the relevant time for the *Kaffenberger* case,
20  which differed in important ways from the one used here by the Libitzkys. *See* Trial Exh. 235 *and*
21  *compare with* Trial Exh. 106. In addition, the taxpayers in *Kaffenberger* "included the amount of
22  $26,700 on the line of Form 4868 for 'other payments and credits' to cover their estimated 1990
23  liability" on April 15, 1991, the very same day they had received from the IRS a notice "stating
24  that they were due a refund of income taxes in the amount of $26,770," which had "led the
25  Kaffenbergers to believe that the IRS had not applied the 1988 refund to the 1989 liability."
26  *Kaffenberger*, 314 F.3d at 948-49. There was much greater clarity about what the Kaffenbergers
27  were informally claiming through their Form 4868 than there was here for the Libitzkys. Overall,
28  "[t]he sufficiency of an informal claim depends on the individual facts of each case," *id*. at 955,

15

and the jury in *Kaffenberger* was clearly presented with different facts than those that were presented to the Court in the bench trial here.

The Libitzkys' reference to "equitable principles," Dkt. No. 101 ¶ 49, is also not a point in their favor. To be clear, none of the Court's conclusions are based on weighing equitable factors. *See* Dkt. No. 102 at 25 (arguing court may not weigh equitable factors). Even so, it bears mention that Libitzky testified repeatedly at trial that he regarded income tax returns as being "for informational purposes only, because we owe no money." Trial Tr. at 116:12-13; *see also id*. at 94:12-15 ("We were dealing under the assumption that everything we owed was paid, that the tax return was for informational purposes only, and we didn't think it was that big a deal, frankly."). This misunderstands the duty of taxpayers, and the role of the IRS. A timely filing of tax returns is a civic duty under the law, regardless of whether one owes additional taxes for that tax year. *See*, *e.g.*, *United States v. Walker*, 479 F.2d 407, 409 (9th Cir. 1973) (affirming instruction to jury that "[i]t is the gross income of $600.00 or more, according to the law, that requires one to file an income tax return. Whether the taxpayer's return would show that he owed a tax is irrelevant, and should not be considered by you on the question of the taxpayer's duty to file a return.").

In effect, Libitzky took the idiosyncratic view that the IRS was like a personal bank where he could make withdrawals and deposits on his own timetable with the expectation that the IRS would square it all for him in the end. That is not the role of the IRS. The IRS does not have the personnel or resources to function as a taxpayer's financial repository, and certainly has no statutory mandate to do so. The IRS is organized to carry out the responsibilities of the Secretary of the Treasury pursuant to 26 U.S.C. § 7801, and according to its website, it "collected almost $3.5 trillion in revenue and processed more than 240 million tax returns" in fiscal year 2020. *See* https://www.irs.gov/about-irs/the-agency-its-mission-and-statutory-authority (last visited March 1, 2023). The Libitzkys' 2011 tax return was not a minor form document "for informational purposes only," and their failure to file it for years, and not until an IRS agent personally came calling to collect, was not a trivial event, as Libitzky would have it.

The Seventh Circuit's observations in *Kikalos v. United States*, 479 F.3d 522, 526-27 (7th Cir. 2007), fit this case to a tee:

> In this case, . . . , the Kikaloses' failure to provide any information regarding the grounds for the refund sought was more than harmless noncompliance. The insufficient refund claim contained no facts "sufficient to apprise the Commissioner" of the claim's merits. Moreover, the IRS sent the Kikaloses a letter informing them of their claim's deficiency. The letter specifically stated that the Kikaloses could re-file a new claim with the missing information. Although the Kikaloses had over a year to do so, they did not. Courts created the informal claim doctrine to provide equitable relief to taxpayers who made good faith attempts to amend harmless errors in their refund claims even though the statute of limitations would otherwise bar those amendments. Based on the facts before the Court, the informal claim doctrine cannot help the Kikaloses.

*Kikalos*, 479 F.3d at 526-27. The Court reaches the same conclusion as to the Libitzkys.

## CONCLUSION

The Court lacks jurisdiction over the Libitzkys' claim for a refund or credit for taxes paid, pursuant to 26 U.S.C. § 6511(b)(2)(A). The case is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: March 2, 2023

JAMES DONATO
United States District Judge

17